*In re* MINOR & SON, Bankrupts.

*(District Court, W. D. Pennsylvania. April 18, 1882.)*

BANKRUPTCY—PARTNERSHIP WITH INFANT SON—FIRM PROPERTY.

A father formed a mercantile copartnership with an infant son, in his twentieth year, the father contributing his stock of merchandise, and some book accounts, and the son his time and services, each to have a half interest. Thenceforth the business was conducted in the name of and by the firm openly and notoriously, and with the knowledge of the father's individual creditors, for more than a year, during which time the old stock was disposed of, and a new stock bought by the firm very largely on credit. One of the old individual creditors of the father then levied upon the new stock, whereupon the partners, upon their joint petition, (which did not disclose the son's infancy,) were adjudged bankrupts. The transaction between father and son was free from actual fraud, but the register in bankruptcy found it was constructively fraudulent as

to the father's then creditors, because, after deducting the value of the partnership interest the son acquired, the remaining property of the father was insufficient to pay his debts. *Held*, that however it might have been with respect to the original stock of goods, the new acquisitions of the firm could not be seized by the father's creditors, but must be treated as firm property, and the proceeds applied to firm debts.

In Bankruptcy. *Sur* register's report as to liens on goods, etc.

ACHESON, D. J. On July 1, 1876, H. Clay Minor and Albert B. Minor, partners doing business at Waynesburg, in Greene county, in the firm name of H. Clay Minor & Son, were adjudged bankrupts upon their joint petition, filed June 29, 1876. The firm had at their storeroom a stock of miscellaneous merchandise, which, on June 19, 1876, had been levied on by the sheriff of Greene county, upon a *fi. fa.* that day issued *sur* judgment of *B. F. Flenniken, for use*, v. *H. Clay Minor and K. J. Brant*, and also levied on by virtue of several subsequent executions against H. Clay Minor. All these executions were upon judgments for individual debts of H. Clay Minor. This court having enjoined the sale of said stock under said executions, the goods came into the hands of the assignee in bankruptcy, who sold them. Afterwards, upon the petition of K. J. Brant, who was surety for H. Clay Minor in the first-mentioned judgment, and to whom the plaintiff therein had assigned his rights, the case was referred to the register to ascertain if said stock of goods was subject to any liens, etc. Recently the register filed his report, from which it appears that the net fund realized from the sale of said stock of goods was $1,021.39, the whole of which the register awarded to Brant. To this report the partnership creditors have excepted. The contest, therefore, is between Brant, the individual creditor of H. Clay Minor, and the partnership creditors of the bankrupts, who *prima facie* are entitled to the proceeds of the firm stock not only on general principles, but by the express provisions of section 5121, Rev. St. To understand the reasons which controlled the register it will be necessary to recite the material facts:

About May 1, 1875, H. Clay Minor, who had theretofore carried on the business of merchandising, formed a copartnership with his son, Albert B. Minor, who was then in his twentieth year. The father put into the firm his stock of merchandise, estimated as worth $2,000, together with his book accounts, amounting nominally to about $3,000. The son's contribution to the partnership consisted of his time and services. The father and son were to have equal interests in the concern. Immediate notice of the formation of the copartnership was given by advertisement in all the local newspapers, and it was well known. The transaction had the utmost publicity, and the individual creditors of H. Clay Minor, who have made claim to the fund in

dispute, undoubtedly soon knew of the formation of the firm. Thereafter all purchases were made by the firm, the goods billed and shipped to them, and the whole business conducted in the name of and by the firm. The evidence (including the schedules in bankruptcy) establishes that at the date of the bankruptcy the firm were indebted to divers creditors (the exceptants) to the amount of about $3,000, all of which debts were incurred after November, 1875, and a large proportion thereof in the spring of 1876. It fairly appears from the evidence that the stock of goods on hand at the time of the sheriff's levy consisted almost wholly of new purchases recently made by the firm. Substantially it was a new stock of goods, and had been bought very largely on credit. Some of these unpaid-for goods reached the store after the levy, and went into this stock. At the date of the formation of the partnership, B. F. Flenniken held the individual note of H. Clay Minor for $2.000. Upon the last renewal of this note, on January 31, 1876, Brant became surety thereon. That note matured April 1, judgment thereon was entered June 14, an execution, at Brant's instance, issued June 19, 1876. Brant settled with the plaintiff and took an assignment of his rights after the sheriff's sale was enjoined.

The register, as I understand his report, concedes that the partnership between H. Clay Minor and Albert B. Minor was entered into in good faith, and without any covinous intent towards creditors. The evidence warrants such finding. Indeed, so far as I can discern, the transaction was absolutely free from the taint of actual fraud. But the register, by a rather close calculation, finds that, after deducting the value of the interest which Albert B. Minor acquired under the partnership agreement, the property, real and personal, remaining to H. Clay Minor was insufficient to pay his then debts. If this finding be accepted as correct, it must, I think, also be said that there is not a particle of evidence that H. Clay Minor then contemplated insolvency, or foresaw it; nor does it appear that the inadequacy of his remaining property to pay his debts was then comprehended, either by himself or Albert. The register, however, held that the partnership was, constructively, fraudulent, as respects the then existing creditors of H. Clay Minor; as against whom, therefore, he decided there were no equities, as between the partners, of which the firm creditors could avail themselves in the present contest; and hence he concluded that the Flenniken execution must prevail. The register applied to the case the principle that it is the equity between the partners themselves which governs in the distribution of partnership assets, and not the mere rights of creditors. His views are ably presented in his report; nevertheless, his conclusion strikes me as unjust to the firm creditors, and I am unable to adopt it.

The register regarded the transaction as a voluntary settlement by H. Clay Minor upon his son. He treated the case as one of pure gift, entirely eliminating from it the element of contract. Because a father is entitled to the services of his infant son, the register held that there was no moving consideration from the son to sustain the partnership as against the father's creditors. Perhaps in this deduction the register is right, if we confine our attention to the original contract, although even then something is to be said in favor of the contrary view. A father may emancipate his infant son and permit him to enter into contracts in his own behalf for service. *McCloskey* v. *Cyphert*, 27 Pa. St. 230; *Wodell* v. *Coggershall*, 12 Metc. 91. And as an infant may enter into a contract of partnership, (Collyer, Part. § 131,) the contract here worked the emancipation of the son. That the arrangement was necessarily prejudicial to the father's creditors is an unwarrantable assumption. Stimulating the energies of the son, and calling forth his business talents and capacity, it might well have resulted to the great financial advantage of the father. Had the latter, acting in good faith, entered into the same agreement with a stranger, adult or infant, it surely could not have been pronounced constructively fraudulent. Why, then, it may be asked, with some reason, should the contract with the son be so stigmatized? But in the view I take of the case it is not necessary to decide whether or not, upon this point, the register was right.

In my judgment the case does not turn on the question whether the contract of partnership was not originally avoidable by the father's creditors. If it be conceded that they might have seized the original stock of goods as his property, it by no means follows that they had the right so to deal with the stock of goods on hand on June 19, 1876. Flenniken, upon whose rights Brant must stand, (for by virtue merely of his suretyship he is a subsequent creditor,) renewed his note long after the formation of the firm, and when he must have known of its existence. In common with the other individual creditors of H. Clay Minor he stood by without objection for more than a year while the firm openly and notoriously traded with the world. In the mean time the original stock of merchandise was disposed of and new purchases were made by the firm. Nor was the old stock simply transmuted into new. The goods which came into the hands of the assignee in bankruptcy were bought largely on credit—bought, too, from those exceptants, or some of them. The real question then is whether, under all the circumstances, the partnership creditors are not equitably entitled to have these new acquisitions or their proceeds

applied to the firm debts. I am of opinion that they are so entitled. Bought and held by the firm, these goods, as between the parties themselves, and as between them and the firm creditors, undoubtedly were partnership property, and I see no just reason why, in favor of the individual creditors of H. Clay Minor, they should be otherwise treated.

It lies not in the mouth of Brant or his assignor to say that Albert B. Minor has no equities of which the firm creditors may avail themselves. Certainly his infancy is his personal privilege, which a stranger may not set up. The partnership creditors, when they dealt with the firm, had a right to suppose he was of full age, and I should be very loath to admit that he could, if so disposed, by pleading his infancy, deprive them of their derivative equities to have the firm assets applied to the firm debts. See *Backus* v. *Murphy*, 39 Pa. St. 402; *Ex parte Watson*, 16 Ves. 265. But he attempts nothing of the kind. On the contrary, moved by equitable considerations and to secure fair play,—without disclosing his infancy to the court,—he had himself adjudged a bankrupt conjointly with his partner. The case, then, being one for the equitable marshalling of assets, the preference which the register gave to the Flenniken execution must be disallowed.

And now, April 18, 1882, the exceptions of the partnership creditors are sustained and the register's distribution is set aside.