## APPEALS OF HARRY N. GIFFORD AND LOUIS W. CULLUM.

Docket Nos. 2677 and 2678. Submitted June 1, 1925. Decided January 16, 1926.

1. In the case of a tenant holding and using premises under a lease from year to year where the landlord is a member of the tenant partnership, the cost of improvements and additions to buildings on leased premises and of removable machinery and equipment, charged to expense when made or acquired, may be restored to the tenant's asset accounts for the purposes of invested capital, upon proof of the continued existence and use of such properties during the taxable year.

2. A deduction for a loss of the par value of stock of a bankrupt corporation can not be allowed in the absence of proof of the cost of such stock when acquired after March 1, 1913.

*Fred S. Johnson*, *C. P. A.*, and *Peter J. Vandebergh*, *C. P. A.*, for the taxpayers.

*B. G. Simpich,·Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

| HARRY N. GIFFORD. | | | LOUIS W. CULLUM. | | |
| --- | --- | --- | --- | --- | --- |
| Year. | Deficiency. | Over-assessment. | Year. | Deficiency. | Over-assessment. |
| 1917 | $1,042.23 | | 1917 | $1,010.26 | |
| 1918 | | $134.56 | 1918 | | $248.79 |
| 1919 | 3,165.99 | | 1919 | 3,435.66 | |
| 1920 | 2,009.97 | | 1920 | 2,599.65 | |
| Total | 6,218.19 | 134.56 | Total | 7,045.57 | 248.79 |

By agreement of counsel the appeals were tried together.

FINDINGS OF FACT.

Harry N. Gifford resides at Elgin, Ill., and Louis W. Cullum resides at Monticello, Ind.

On March 15, 1912, J. P. Younger proposed to Gifford that they form a partnership for the purpose of engaging in the wholesale milk and cream business. Gifford advised Younger that such an arrangement would be agreeable to him, provided the partnership should include Cullum, with whom he had previously entered into a partnership agreement. Gifford had previously been engaged in the milk and cream business with Cornell Brothers, Inc.,·a corporation which had become bankrupt. It was thereupon orally agreed

that the partnership of Younger, Gifford & Cullum should be formed and that 50 per cent of the profits should go to Younger, 25 per cent to Gifford, and 25 per cent to Cullum.

On the same day Younger purchased from Elmer J. Fellows, trustee in bankruptcy for Cornell Brothers, Inc., 51 shares, or 51 per cent, of the capital stock of the Garden Prairie Creamery Co., a corporation owning the land and buildings in which Cornell Brothers, Inc., had carried on a milk and cream business. In addition to the shares of stock, Younger purchased from the trustee all of the machinery and equipment installed on the premises of the Garden Prairie Creamery Co. He also acquired a lease by the Garden Prairie Creamery Co. of its land and buildings to Cornell Brothers, Inc., for the period beginning July 26, 1904, and expiring on April 30, 1914. The lease provided for an annual rental of $1,150 and contained an option for renewal for a further period of ten years.

The partnership of Younger, Gifford & Cullum commenced business on April 1, 1912, and continued as such until the death of J. P. Younger, on February 15, 1919, during which time it continuously occupied the premises of the Garden Prairie Creamery Co. and conducted a wholesale milk and cream business thereon. The lease to the premises was not assigned to the partnership, but the annual rental of $1,150 was paid by the partnership. The premises were never occupied by Younger as an individual. For the use of the machinery, apparatus and equipment purchased from the trustee, the partnership paid to Younger $3,500 per annum.

Upon the expiration of the original lease, a new lease was executed direct to Younger for a period of 10 years, expiring April 30, 1924, for the same annual rental as was provided in the original lease. The rental under this lease was also assumed by the partnership. Both leases gave the lessee the right to remove any additions made by him, or in his behalf, to the property of the Garden Prairie Creamery Co., or to be compensated for such additions at a fair value, to be fixed by appraisals in the manner provided by the terms of the lease.

The partnership made certain additions to the buildings of the Garden Prairie Creamery Co., the cost of which was paid from the funds of the partnership and by it charged to expense on its books as follows:

| Period. | Amount. |
| --- | --- |
| Year ended March 31, 1913 | $1,475.00 |
| Year ended March 31, 1914 | 8,062.18 |
| Year ended March 31, 1915 | 430.03 |
| Year ended March 31, 1917 | 213.50 |
| Total | 10,180.71 |

104881—27——25

From time to time the partnership purchased personal and removable property in the nature of machinery, apparatus and equipment necessary for the proper conduct of its business. This equipment was installed on the premises of the Garden Prairie Creamery Co. The purchases were billed to the partnership, paid for by the partnership out of partnership funds, and charged to expense on the books of the partnership, as follows:

| Period. | Amount. |
|---|---|
| Year ended March 31, 1913 | $3, 969. 26 |
| Year ended March 31, 1914 | 17, 430. 93 |
| Year ended March 31, 1915 | 339. 60 |
| Year ended March 31, 1916 | 2, 736. 39 |
| Year ended March 31, 1917 | 4, 213. 07 |
| Year ended March 31, 1918 | 3, 843. 14 |
| Period ended Dec. 31, 1918 | 1, 331. 03 |
| Period ended Feb. 15, 1919 | 22. 00 |
| Total | 33, 885. 42 |

Upon the death of J. P. Younger, the partnership of Gifford and Cullum continued to operate the creamery business previously operated by the firm of Younger, Gifford & Cullum. In January, 1921, the taxpayers purchased from the heirs-at-law of J. P. Younger all the right, title and interest, which J. P. Younger owned during his lifetime and at the time of his death, in and to all property situated on the premises of the Garden Prairie Creamery Co. The purchase also included the 51 per cent of the capital stock of that company. The purchase price was $60,000.

After the death of Younger, a schedule was filed with the probate court showing the personal property owned by the estate. The machinery and equipment previously purchased by the partnership and paid for from partnership funds was listed in this schedule item by item. There was also prepared from the partnership books a statement of the assets and liabilities of the partnership. This statement did not include any of the machinery or equipment or any additions to buildings paid for by the partnership and charged on its books to expense. This statement was signed and sworn to by Harry N. Gifford and Louis W. Cullum, as being a true statement of all of the assets and liabilities of the partnership at the date of the death of J. P. Younger.

Subsequent to that date, in the year 1922, an audit of the books of account of the partnership of Younger, Gifford & Cullum was made by accountants. This audit disclosed that the additions to buildings and the purchases of machinery, apparatus, and equipment, purchased and paid for by the partnership, had been charged off as expense items. As a result of the audit these items were restored to capital on the books of the partnership.

The books of Younger, Gifford & Cullum were subsequently examined by revenue agents. In their report to the Commissioner, dated May 12, 1923, they stated that, inasmuch as the lease to J. P. Younger of the premises of the Garden Prairie Creamery Co. had not been assigned to the partnership, the partnership operated under a lease from year to year and, at the expiration of each year, title to any property installed on the premises by the partnership during that year vested in J. P. Younger, and such expenditures by the partnership were properly charged to expense instead of capital. The Commissioner has computed the tax of the partnership in accordance with the recommendations of the revenue agents, excluding from invested capital the value of the property and disallowing deductions claimed for its depreciation, resulting in a net increase in the distributive shares of the partners for the years involved in these appeals.

On or about December 1, 1913, Cullum acquired 15 shares of the preferred stock of the American Real Estate Co. of a par value of $100 per share. About the same date a report was issued by the company showing preferred stock of $1,000,000 par value, and common stock of $100,000 par value outstanding; also surplus available for stockholders in the amount of $3,247,789.13. The total bonded indebtedness was shown as $13,650,000. On April 19, 1916, the assets of the company were taken over by trustees in bankruptcy. Reports were issued from time to time showing a decrease in the value of assets but no corresponding decrease in liabilities and, on June 30, 1920, a report was issued showing total assets in an amount smaller than par value of the bonds outstanding. It does not appear from the record that the receivership has as yet been wound up. Neither does the record show how the shares of stock were acquired nor the cost thereof, if any, to the taxpayer.

On his return for the year 1919 the taxpayer deducted as a loss the par value of the shares of stock owned by him. This deduction was disallowed by the Commissioner.

### DECISION.

The deficiencies should be computed in accordance with the following opinion. Final determination will be settled on 15 days' notice, under Rule 50.

### OPINION.

TRUSSELL: The principal question involved in these appeals is whether or not certain improvements and additions to leased premises occupied by the partnership, Younger, Gifford & Cullum, of which the taxpayers were members, and certain machinery, appara-

tus and equipment were partnership assets, all of the items mentioned having been purchased with partnership funds and used exclusively in the partnership business. If these items were partnership assets, they should be included in invested capital for the purpose of computing partnership excess-profits tax for 1917, and the partnership is entitled to a reasonable allowance for the exhaustion, wear and tear of the property for all years involved in this appeal.

As a general rule, property purchased with partnership funds is presumed to belong to the firm. This is held to be true even though the title has been made to one of the partners or all of the partners individually. See Rowley on the Modern Law of Partnership, vol. 1, section 276. In *Hoxie* v. *Carr*, Fed. Cas. No. 6802, the court said that, where payment is made out of partnership funds for property necessary for the ordinary operation of the partnership business and the property is actually so employed, the presumption that it belongs to the partnership will be decisive in the absence of countervailing circumstances. See also *Fairfield* v. *Phillips*, 83 Iowa, 571; 49 N. W. 1025; *In re Minor*, 11 Fed. 406; *Deming* v. *Moss*, 40 Utah, 501; 121 Pac. 971; and *In re Welch*, 137 N. Y. S. 941, 943.

In the instant case it is admitted by the Commissioner that the property in question was bought by the partnership and paid for out of partnership funds. It is contended, however, that, inasmuch as the lease to the premises occupied by the partnership was acquired by Younger, renewed in his name, and never assigned to the partnership by him, the partnership was nothing more than a tenant from year to year and all of the property installed on the premises during any one year passed to Younger at the expiration of such year. The Commissioner stresses the fact that the amounts expended for the property in question were charged off on the partnership books as expenses; also the fact that the property appeared item for item as the property of the J. P. Younger estate on the list filed with the probate court and did not appear on the list of partnership assets.

With these contentions we are unable to agree. The facts do not support such a conclusion. The lease to the premises of the Garden Prairie Creamery Co. was acquired by Younger immediately after the agreement was reached with reference to the formation of the partnership. The premises were never occupied by Younger as an individual, but were occupied continuously by the partnership, which assumed and paid the rent direct to the lessor. It thus appears that the lease was acquired for the use and benefit of the partnership, and, having assumed the burdens incident to the occupancy of the premises, it was entitled to any benefits accruing under the lease.

In view of the provision in the lease which permitted the lessee to remove improvements made by such lessee during the term of the lease, or to be reimbursed therefor by the lessor upon termination of the lease, the partnership not only retained title to such improvements during the term of the lease, but had the right to remove them or be reimbursed therefor at the expiration of the term. *Appeal of Frank G. Shattuck Co.*, 2 B. T. A. 7.

With reference to the machinery, apparatus and equipment, there can be no question. It was purchased by the partnership, with partnership funds, for use in the partnership business and, being removable property, it was not in any way affected by the lease or the nature of the tenancy.

The mere fact that the amounts expended for the property in question were charged off on the partnership books as ordinary business expenses, does not make them any the less capital expenditures. The true nature of a transaction can not be changed by a mere bookkeeping entry. The same may be said with reference to the treatment of the property on the list filed in probate court.

In determining the partnership profits and the distributive shares of the taxpayers, the cost of the assets involved in these appeals, less depreciation to December 31, 1916, should be included in partnership invested capital for the purpose of computing excess-profits taxes for the year 1917, and reasonable allowance should be made for all years for the exhaustion, wear and tear of these properties.

In the appeal of Louis W. Cullum there is an additional question as to whether or not certain amounts claimed as losses and bad debts are properly deductible from income. With reference to these items the taxpayer has not adduced sufficient evidence to justify the Board in ruling that they are allowable deductions within the meaning of the law.